# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Curtis and Ethel Nelson,

                                  Plaintiffs,

                                                    Civ. No. 11-1161 (RHK/FLN)
                                                    **MEMORANDUM OPINION
                                                    AND ORDER**

v.

American Home Assurance Company,

                                  Defendant.

---

Jonathan M. Bye, Ann E. Kennedy, Meghan M. Elliott, Lindquist & Vennum PLLP, Minneapolis, Minnesota, for Plaintiffs.

Robert E. Salmon, Dorothy Jaworski Paxton, Erin D. Doran, Meagher & Geer, PLLP, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

   This action arises out of a public construction project near the home of Plaintiffs Curtis and Ethel Nelson in Excelsior, Minnesota.  The Nelsons previously sued the Metropolitan Council (the "Council"), the public body overseeing the project, and S.M. Hentges & Sons, Inc. ("Hentges"), the contractor hired to complete it, in Minnesota state court for damage allegedly caused by the project.  After that action was resolved by a Miller-Shugart settlement,[1] the Nelsons commenced the instant action against Hentges's

---

[1] "In a Miller-Shugart settlement, an insured . . . who has been denied coverage for a claim agrees with the claimant . . . on a judgment for an amount collectible from the insurance policy. The claimant releases the insured from personal liability and the claimant's recovery is limited to the amount obtained from the insurer[]. This type of settlement bears the name of the case Miller

insurer, Defendant American Home Assurance Company ("American Home"), seeking to collect the stipulated settlement amount.  Presently pending before the Court are the parties' cross-Motions for Summary Judgment on the issue of insurance coverage.  For the reasons set forth below, the Court will deny the Nelsons' Motion and grant American Home's Motion.

## BACKGROUND

Most of the key facts are undisputed.  The Council was established by the Minnesota legislature to serve as the regional planning agency for the Twin Cities metropolitan area.  In 2005, it announced plans to upgrade the "Blue Lake Interceptor System," a sewer system serving parts of Carver and Hennepin Counties.  On October 3, 2007, it selected Hentges as the general contractor for the project.

One portion of the project involved replacing a sewer "interceptor" located below ground immediately adjacent to the Nelsons' home.  The Nelsons expressed concerns to the Council about possible damage the project might cause to their property.  In a series of letters, both pre- and post-dating Hentges's commencement of work, the Council agreed to compensate the Nelsons for any damage the project might cause.  In addition, shortly after work commenced, the Nelsons granted the Council a temporary easement permitting access to their property during construction.  The easement required the Council to indemnify and hold the Nelsons harmless for "any and all losses, damages,

---

v. Shugart, 316 N.W.2d 729 (Minn. 1982)."  Corn Plus Coop. v. Continental Cas. Co., 516 F.3d 674, 677 n.2 (8th Cir. 2008).

liability, costs and expenses . . . of any sort whatsoever, resulting from or attributable to the [Council's] exercise of its rights or performance of its obligations" thereunder.

The Council's contract with Hentges required it (Hentges) to obtain a commercial general liability ("CGL") insurance policy naming the Council as an "additional insured." Hentges purchased such a policy from American Home, naming the Council an additional insured but "only with respect to liability arising out of [Hentges's] operations."  The policy provided coverage for "sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage,'" as long as that "property damage" was "caused by an 'occurrence,'" meaning "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

In April 2010, the Nelsons commenced an action in the Carver County, Minnesota, District Court, alleging that the project had caused substantial damage to their property.  They asserted claims against both the Council and Hentges for strict liability, trespass, nuisance, and negligence, as well as a claim for indemnification pursuant to the terms of the easement.  They also asserted a separate breach-of-contract claim against the Council based on its promises to repair all damage caused by the project.  The Council tendered defense of the action to American Home; by letter dated June 15, 2010, it agreed to defend the Council as an "additional insured" under the CGL policy, subject to a reservation of rights.

The parties then undertook discovery, after which the Council and Hentges moved for summary judgment based on the statute of limitations.  In response, the Nelsons argued that the Council was estopped from asserting a statute-of-limitations defense

because of its repeated promises to repair or pay for the damage to their property.  On January 7, 2011, the state court granted Hentges's Motion and dismissed it from the case but denied the Council's Motion because, *inter alia*, there were fact disputes regarding the Nelsons' reliance on the Council's promises.  The case was then set for trial.

On February 16, 2011, American Home advised the Council that it was denying coverage and would no longer defend it in the state-court action in light of the summary-judgment ruling.  It pointed to the CGL policy's additional-insured clause, which extended coverage to the Council only for "liability arising out of [Hentges's] operations."  With Hentges dismissed, American Home concluded that the Council no longer qualified as an additional insured because there was "no longer any possibility that Hentges can be found liable for its operations at the project, [and therefore there existed] no possibility that the Council's liability arises out of Hentges' operations."  The letter expressly reserved all of American Home's rights, "including the right to assert additional defenses to any claims for coverage."

On March 2, 2011, with the assistance of a court-appointed mediator, the Nelsons agreed to settle their claims against the Council.  The settlement agreement provided, among other things, that the Council would (1) make a $250,000 cash payment to the Nelsons and (2) stipulate to the entry of a <u>Miller-Shugart</u> judgment against it for $900,000.  The Nelsons and the Council subsequently filed a stipulation with the state court, pursuant to which the Council "consent[ed] and stipulate[d] to [the Nelsons] taking a judgment against [it] in the sum of $900,000," to be satisfied solely from the proceeds of the CGL policy.  The $900,000 was allocated to six different categories of alleged

damages, including repair costs, relocation expenses, and attorneys' fees, and the
stipulation provided that all of the allocated damages were "because of physical injury to
tangible property . . . caused by an accident, including continuous or repeated exposure to
substantially the same general harmful conditions, arising out of Hentges' operations."
The stipulation also assigned all of the Council's rights against American Home to the
Nelsons. The Council provided American Home with a copy of the stipulation before it
was filed and informed the insurer that the state court would hold a hearing on April 19,
2011, regarding whether to approve it. American Home opted not to appear at the
hearing, and the state court ultimately approved the stipulation. The $900,000 judgment
was entered in the state-court action on May 3, 2011.

    The Nelsons commenced the instant action on May 4, 2011, asserting *inter alia*
that American Home had breached the CGL policy by failing to defend the Council in the
state-court action and failing to pay the $900,000 stipulated judgment amount. They also
sought a declaration that the policy provided coverage for the damages specified in the
Miller-Shugart stipulation and that the stipulation was reasonable and enforceable. (See
Compl. ¶¶ 17-27.) The following day, the Nelsons moved for summary judgment "on the
threshold issue of coverage," asking the Court to quickly resolve that issue because "if
there is found to be no coverage for the Miller-Shugart judgment, that [would] end[] the
matter." (Doc. No. 4 at 1-2.) In response, American Home asserted that it needed time to
conduct discovery on coverage issues, including "the existence of an 'occurrence'" that
would trigger coverage under the policy. (Doc. No. 15 at 5.) The Nelsons replied that no
discovery was necessary to determine whether coverage existed. (See Doc. No. 19 at 5-

8.)  On June 13, 2011, this Court denied the Nelsons' Motion without prejudice, concluding that the parties should be afforded the opportunity to conduct discovery to "address all the potential" coverage questions at issue.  (Doc. No. 21 at 3.)

Less than one month later, the Nelsons filed the instant Motion for Summary Judgment (Doc. No. 26) as to coverage.  Their brief is a near-verbatim copy of their previous one, relying on precisely the same arguments.  American Home has responded by cross-moving for summary judgment as to coverage.  (See Doc. No. 44.)  The Motions have been fully briefed, and the Court held a hearing on September 22, 2011.  The Motions are now ripe for disposition.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528

- 6 -

F.3d 1074, 1078-79 (8th Cir. 2008).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified.  When considering the Nelsons' Motion, the Court views the record in the light most favorable to American Home, and when considering American Home's Motion, the Court views the record in the light most favorable to the Nelsons.  "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact."  Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, No. 10-3532, 2011 WL 873121 (8th Cir. Mar. 15, 2011).

## ANALYSIS

The parties dispute the existence of insurance coverage in this case, focusing primarily on whether the Council was an "additional insured" under the CGL policy.  As noted above, the policy rendered the Council an additional insured only for "liability arising out of [Hentges's] operations."  According to American Home, once Hentges was dismissed from the state-court action, liability arising out of its operations could no longer exist, and hence the Council ceased to be an "additional insured" at that time.  (Def. Mem. at 16-25.)  And if the Council was not an "additional insured," no coverage existed and American Home cannot be liable for any of the damages allocated in the Miller-Shugart stipulation.  (Id.)

While this issue was at the core of the parties' briefing, ultimately it need not be decided to resolve the instant Motions.  Although one prerequisite to coverage is that the Council was an "additional insured," that is not the *only* prerequisite.  Another condition

to coverage is that the Nelsons' damages were caused by an "occurrence."  And it is here that their claims founder, because they have made only a cursory (and unavailing) effort to satisfy that condition.[2]

As both parties agree, the Nelsons bear the burden of demonstrating the existence of coverage.  See, e.g., Koehnen v. Herald Fire Ins. Co., 89 F.3d 525, 529 (8th Cir. 1996) ("The judgment creditor-plaintiff seeking to enforce a Miller-Shugart settlement must prove . . . insurance coverage."); SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311 (Minn. 1995), overruled on other grounds by Bahr v. Boise Cascade Corp., 766 N.W.2d 910 (Minn. 2009).  To do so requires them to show "property damage" caused by an "occurrence."  But in their opening brief, the Nelsons argued only that the Miller-Shugart stipulation itself provided that their damages were "caused by an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  (Pl. Mem. at 12.)  While such language parrots the policy's definition of an "occurrence," it cannot be conclusive on the coverage issue.  Indeed, if that were true every party entering into a Miller-Shugart settlement would simply agree that each element of claimed damage was caused by an occurrence (or track some other coverage-triggering language in the policy).  This would undermine the insurer's opportunity to

---

[2] The Nelsons assert that because American Home did not rely on the absence of an "occurrence" when denying coverage in February 2011, it is estopped from doing so now.  (See Pl. Mem. in Opp'n at 3-5.)  This argument fails for two reasons.  First, when denying coverage American Home reserved its right to assert other coverage defenses.  Second, and of more importance, the Eighth Circuit and Minnesota courts have consistently held that "estoppel cannot be used to expand or create insurance coverage" where it otherwise would not exist.  Minn. Commercial Ry. Co. v. Gen. Star Indem. Co., 408 F.3d 1061, 1063 (8th Cir. 2005) (citing Shannon v. Great Am. Ins. Co., 276 N.W.2d 77, 78 (Minn. 1979)).  If American Home can show that there is, in fact, no coverage under the policy, it cannot be estopped from denying coverage now.

contest coverage, which it indisputably retains notwithstanding a <u>Miller-Shugart</u>

agreement.  <u>See, e.g.</u>, <u>Buysse v. Baumann–Furrie & Co.</u>, 448 N.W.2d 865, 872 (Minn.

1989) ("[B]efore the insurer has any obligation to pay the judgment entered on the

[<u>Miller-Shugart</u>] stipulation, it has the opportunity to test its policy defense; and if the

insurer's denial of coverage is upheld, that is the end of the matter."); <u>FDIC v. Gordinier</u>,

783 F. Supp. 1181, 1192 (D. Minn. 1992) (Alsop, J.) ("A finding that a settlement is valid

under <u>Miller–Shugart</u> does not resolve any of the coverage issues the insurer might

raise."), <u>rev'd on other grounds</u> <u>sub nom.</u> <u>FDIC v. St. Paul Fire & Marine Ins. Co.</u>, 993

F.2d 155 (8th Cir. 1993).

As the Minnesota Supreme Court noted in <u>Miller v. Shugart</u>, the reason for such a

rule is obvious:  the insurer does not participate in preparing the settlement stipulation,

and "in arriving at the settlement terms, [an insured] would [be] quite willing to agree to

anything as long as plaintiff promised . . . full immunity."  316 N.W.2d at 735; <u>see also</u>

<u>Koehnen</u>, 89 F.3d at 529 (noting that insured "has no incentive to drive a hard bargain"

when entering into <u>Miller-Shugart</u> stipulation).  Hence, "while the judgment [in the state-

court action] is valid as between the stipulating parties, *it is not conclusive on the*

*insurer.*"  <u>Miller v. Shugart</u>, 316 N.W.2d at 735 (emphasis added); <u>accord, e.g.</u>, <u>Innsbruck</u>

<u>Village Ass'n v. Stock Roofing, Inc.</u>, No. A06-95, 2006 WL 3772286, at *2 (Minn. Ct.

App. Dec. 26, 2006) (rejecting contention that insurers were bound by <u>Miller-Shugart</u>

stipulation providing that "all damages were the result of Stock Roofing's negligence,"

since insurers contended that certain damages were based on breach of contract and

hence uncovered; the stipulation "effectively shifted all liability to [the insurers], without

permitting [them] to raise legitimate defenses"); <u>Steen v. Those Underwriters at Lloyds, London Signatory to Policy No. E0100191</u>, 442 N.W.2d 158, 160-62 (Minn. Ct. App. 1989) (insurer remains free to contest coverage based on insured's allegedly intentional acts despite <u>Miller-Shugart</u> stipulation indicating that all damages were caused by negligence). For these reasons, the recitals in the <u>Miller-Shugart</u> stipulation cannot carry the day for the Nelsons here.

After American Home pointed out that the Nelsons had "offer[ed] no other evidence to sustain their burden of" proving an "occurrence" under the policy (Def. Mem. at 26-27), the Nelsons responded by arguing – for the first time – that American Home had *acknowledged* they had sustained property damage caused by an "occurrence." (<u>See</u> Pl. Mem. in Opp'n at 5.) In support, they pointed to the recent deposition testimony of Gary Umble, a "casualty specialist" employed by Chartis Claims, Inc. ("Chartis").[3] When asked in his deposition whether he "underst[ood] that at least a portion of the Nelsons' claim was [for] damages . . . caused by an accident" – which the policy equates with an "occurrence" – he answered in the affirmative. (Bye Aff. Ex. A at 47.) This argument is unavailing, because it misapprehends the nature of the claims at issue here.

An insurer owes an insured two duties: the duty to defend and the duty to indemnify. When a complaint alleges facts arguably falling within the scope of the

---

[3] No party has explained to the Court precisely how Chartis is involved in this case. Documents in the record indicate that Chartis reviewed the Nelsons' claim against the Council and indicated that it would provide a defense on behalf of American Home. (<u>See</u> Ruwe Aff. Ex. C.) It also sent the letter withdrawing the Council's defense and denying coverage, which was signed by Umble. (<u>Id.</u> Ex. D.) It appears, therefore, that Chartis is some type of agent for American Home, although the nature and scope of that agency is unclear.

policy, the insurer's duty to defend is triggered and it must undertake the insured's

defense.  E.g., St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co., 496

N.W.2d 411, 415 (Minn. Ct. App. 1993).  Yet, the duty at issue here is the duty to

indemnify, which is narrower than the duty to defend.  Id.  Rather than looking to the

allegations in the complaint, the duty to indemnify "is determined by the factual findings

of a jury."  Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co., No. A10-1992, 2011

WL 2519203, at *9 (Minn. Ct. App. June 21, 2011) (citations omitted); accord, e.g.,

Economy Fire & Cas. Co. v. Iverson, 445 N.W.2d 824, 826 (Minn. 1989) (insurer's duty

to indemnify is based on the "facts developed at trial"), overruled on other grounds by

Am. Standard Ins. Co. v. Le, 551 N.W.2d 923 (Minn. 1996).  In other words, an insurer's

duty to indemnify arises only if the insured ultimately proves up facts showing coverage.

See, e.g., Tschimperle v. Aetna Cas. & Sur. Co., 529 N.W.2d 421, 424 (Minn. Ct. App.

1995) (finding no coverage based on "[t]he facts of th[e] case"); Brownsdale Coop. Ass'n

v. Home Ins. Co., 473 N.W.2d 339, 342 (Minn. Ct. App. 1991) (noting trial court's

finding of coverage was "supported by the evidence"); Poor Richards, Inc. v. Chas. Olson

& Sons & Wheel Serv. Co., 380 N.W.2d 225, 227 (Minn. Ct. App. 1986) (agreeing that

insurer owed no duty to indemnify because insured "presented no facts to show that

[insurer] might be liable").

    When applied in the Miller-Shugart context, this principle requires the plaintiff to

make "some showing by evidence which fairly and reasonably tends to show the

existence of the facts" supporting coverage.  Mikesh v. N. J&B Enters., Inc., No. C3-01-

993, 2001 WL 1609343, at *1-2 (Minn. Ct. App. Dec. 18, 2001) (emphasis added);

accord, e.g., Ploetz v. Beaver Bldg. Supply, Inc., No. C8-98-945, 1998 WL 865670, at

*1-2 (Minn. Ct. App. Dec. 15, 1998) (same); Poor Richards, 380 N.W.2d at 227 (same).

For example, in Heritage Mutual Insurance Co. v. Croix Circuits, Inc., No. CV-95-1354,

1996 WL 118297 (Minn. Ct. App. Mar. 19, 1996), the Minnesota Court of Appeals

affirmed the trial court's determination that the Miller-Shugart plaintiff could not recover

because the evidence showed the stipulated damages were not caused by an

"occurrence." Id. at *4-6; accord, e.g., Tschimperle, 529 N.W.2d at 424 (same); Ploetz,

1998 WL 865670, at *2 (same); see also, e.g., Ill. Farmers Ins. Co. v. Tischer, No. A07-

0867, 2008 WL 1972506, at *4 (Minn. Ct. App. May 6, 2008) (no recovery on Miller-

Shugart settlement when evidence showed damages were caused by conduct falling

within policy exclusion).

    Here, Umble testified only about *his understanding* of the Nelsons' *allegations* –

in other words, what he thought the claims were alleging.  This is different than

acknowledging, as a factual matter, that there had actually been an "occurrence," that is,

an accident resulting in property damage.  Hence, while Umble's testimony might be

relevant to the existence of a duty to *defend*, which turns only on the allegations in the

complaint, it does not establish that an occurrence had actually taken place and,

accordingly, that coverage existed.[4]

---

[4] Even if Umble had so acknowledged, whether that "admission" would bind either Chartis or
American Home is unclear.  Notably, the deposition transcript submitted to the Court – which
contains only the cover page and eight pages of Umble's testimony (Bye Aff. Ex. A) – nowhere
indicates the scope of Umble's authority at Chartis.  Nor is there any indication that Umble was
testifying as a Chartis corporate designee under Federal Rule of Civil Procedure 30(b)(6).  See
Fed. R. Civ. P. 32(a)(3) ("An adverse party may use for any purpose the deposition of a party or

Besides Umble's deposition testimony, the Nelsons have pointed to no other evidence in an attempt to demonstrate that the stipulated damages were caused by an "occurrence."[5]   Instead, their counsel asserted at oral argument that the coverage determination turns not on the facts, but rather on what the Nelsons *alleged* in the underlying lawsuit.  (See, e.g., 9/22/11 Hear. Tr. at 7-8 ("All we have to establish is what the Nelsons were claiming. . . . [The issue is] only whether . . . the alleged claim was covered; not whether there actually was a covered event.").)  A hypothetical lays bare the flaw in this argument.

Assume, as in this case, that a public construction project were taking place immediately adjacent to a home, and that the homeowners subsequently discovered damage to their home and concluded that it must have resulted from the construction project.  If the homeowners were to sue the contractor for negligence and it tendered defense to its CGL insurer, the insurer likely would be obliged to defend due to the

anyone who, when deposed, was the party's officer, director, managing agent, or designee under Rule 30(b)(6).").  And, the content of Umble's testimony does not suffice to establish his authority.  See Fed. R. Evid. 801(d)(2) ("[t]he contents of the statement shall be considered but are not alone sufficient to establish the declarant's authority" to speak on behalf of a corporation).  Further, assuming *arguendo* that Umble had conceded an "occurrence" *and* that such a concession were binding on Chartis, the Court still would be unable to discern whether that concession would bind *American Home*, the instant Defendant.  There is little in the record regarding the relationship between Chartis and American Home (see supra note 3), and hence the Court simply cannot determine whether Umble's statement may be imputed to the latter.

[5] At oral argument, counsel for the Nelsons asserted that they had "submitted . . . expert affidavits which talk about" whether there had been an occurrence under the policy.  (9/22/11 Hear. Tr. at 9.)  The Court has scoured the record and has been unable to locate the referenced "expert affidavits."  Regardless, even if they were in the record, the Nelsons did not cite them in their Motion papers.  "A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support [a] party's claim."  Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 915 (8th Cir. 2007) (citation omitted).

*allegations* made against the contractor.  But if the homeowners and the contractor

reached a Miller-Shugart settlement, would the insurer be precluded from disputing

liability if it determined that the damage was caused not by the construction project, but

rather by the homeowners' son?  Under the logic espoused by the Nelsons here, the

answer would be "Yes" – because the lawsuit *alleged* a covered claim, the insurer would

be stuck paying for it, regardless of whether the *actual facts* showed no coverage.  This is

a non-sensical result.

Accepting the Nelsons' argument would mean that a plaintiff could recover under

an insurance policy even when the facts showed no coverage existed.  In essence, it

would permit the plaintiff to expand coverage under the policy simply based on the

allegations he made in his complaint.  Yet, a Miller-Shugart plaintiff "cannot compel the

[insurer] to perform . . . in a matter otherwise than as provided by the [policy]."  Poor

Richards, 380 N.W.2d at 228 (quoting Bacon v. Felthous, 115 N.W. 205, 207 (Minn.

1908)).  And such a rule would be inconsistent with the cases holding that the label on the

plaintiff's claim in the underlying action is not dispositive of the coverage question.  See,

e.g., Remodeling Dimensions, 2011 WL 2519203, at *9; Ploetz, 1998 WL 865670, at *2;

Ross v. City of Minneapolis, 408 N.W.2d 910, 913 (Minn. Ct. App. 1987).  Simply put,

the *allegations* in the state-court action cannot control the coverage question; it is the

*facts* that matter.  See Innsbruck Village, 2006 WL 3772286, at *2 ("[A] Miller-Shugart

settlement is not intended as a vehicle to shift liability for all acts, *covered or not*, onto

the insurer.") (emphasis added).

The Nelsons also asserted at oral argument that requiring a plaintiff to prove

coverage would undermine the purposes behind a Miller-Shugart settlement.  (See 9/22/11 Hear. Tr. at 9-12.)  They contended that Miller-Shugart must "prevent the insurance company from coming in and re-litigating the merits of the underlying case," or else plaintiffs would have no incentive to enter into such agreements.  (Id. at 13.)  This argument founders on several grounds.

First, the parties to a Miller-Shugart settlement have never fully litigated the merits of the underlying case; they have resolved it short of trial through a settlement. Nor have they litigated the question of insurance coverage.  Hence, there is no possibility of "re-litigation."  Second, an insurer challenging coverage does not force the plaintiff to litigate the underlying *case*.  Rather, the plaintiff must litigate the different (and substantially narrower) question of *coverage*.  For example, in order to prevail at this juncture, the Nelsons must only establish that they sustained "property damage" caused by an "occurrence."  Had they been required to fully litigate the state-court action, however, they would have been obligated to show not only causation and damages, but also several other elements to establish each of their claims (such as the existence of a duty that had been breached in order to prove negligence).  Moreover, the Nelsons were relieved of their obligation to prove a specific amount of damages by settling the state-court action; the stipulated $900,000 judgment amount would be recoverable as long as it fell within a reasonable range of potential recoveries.  See, e.g., Jorgensen v. Knutson, 662 N.W.2d 893, 904 (Minn. 2003) (Miller-Shugart settlement enforceable if, considering all relevant factors, stipulated amount "could have [been] awarded" in underlying action) (emphasis deleted).  Hence, a Miller-Shugart settlement serves a

useful purpose – eliminating some, but not all, of the issues a plaintiff would have to prove in the underlying action – even if it puts the plaintiff to proof regarding coverage. See Innsbruck Village, 2006 WL 3772286, at *2.

For all of these reasons, the Court concludes that the Nelsons have failed to satisfy their burden of establishing coverage under the policy.  But this begs the question:  what now?  The answer requires the Court to turn back to the claims in the Nelsons' Complaint.

Three claims have been asserted in this action.  In Count I, the Nelsons seek a declaration that (i) the policy provides coverage for the damages stipulated in the Miller-Shugart agreement and (ii) American Home breached its duty to defend the Council in the state-court action.  In Count II, the Nelsons seek a declaration that the Miller-Shugart agreement is reasonable and enforceable.  And in Count III, they seek damages for American Home's alleged failure to defend the Council in the state-court action and pay the stipulated $900,000 judgment.  The parties have cross-moved for summary judgment only as to coverage, and the Court has determined that the Nelsons have failed to sustain their burden of proof on that question.  Accordingly, Count I and Count III must be dismissed to the extent they concern coverage.  Moreover, because no coverage has been shown, the Nelsons cannot recover from American Home.  See, e.g., Alton M. Johnson Co. v. M.A.I. Co., 463 N.W.2d 277, 279 (Minn. 1990).  Hence, Count II also must be dismissed.  At bottom, all that now remain pending are claims concerning American Home's duty to defend in the underlying action.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**ORDERED**:

1.      Plaintiffs' Motion for Summary Judgment (Doc. No. 26) is **DENIED**;

2.      American Home's Motion for Summary Judgment (Doc. No. 44) is

**GRANTED**; and

3.      The following claims are **DISMISSED WITH PREJUDICE**:  (1) Count I,

to the extent it seeks a declaration that the policy provides coverage for the stipulated

damages in the Miller-Shugart agreement; (2) Count II in its entirety; and (3) Count III,

to the extent it asserts breach of contract due to American Home's failure to pay the

stipulated damages in the Miller-Shugart agreement.


Dated: October 5, 2011                         s/Richard H. Kyle
                                               RICHARD H. KYLE
                                               United States District Judge