UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Curtis and Ethel Nelson,

                Plaintiffs,

                                    Civ. No. 11-1161 (RHK/FLN)
                                    **MEMORANDUM OPINION**
                                    **AND ORDER**

v.

American Home Assurance Company,

                Defendant.

---

Jonathan M. Bye, Ann E. Kennedy, Meghan M. Elliott, Lindquist & Vennum PLLP, Minneapolis, Minnesota, for Plaintiffs.

Robert E. Salmon, Paula Weseman Theisen, Dorothy Jaworski Paxton, Erin D. Doran, Meagher & Geer, PLLP, Minneapolis, Minnesota, for Defendant.

---

## INTRODUCTION

      This insurance-coverage dispute is before the Court for a second time. Previously, the Court determined that Defendant American Home Assurance Company ("American Home") owed no duty to *indemnify* Plaintiffs Curtis and Ethel Nelson for damages specified in a Miller-Shugart settlement agreement arising out of related litigation in state court. See Nelson v. Am. Home Assurance Co., __ F. Supp. 2d __, 2011 WL 4640889 (D. Minn. Oct. 5, 2011). Presently before the Court are the parties' cross-Motions for Summary Judgment on the duty to *defend*, which were heard on December 7, 2011. For the reasons that follow, the Nelsons' Motion will be granted and American Home's denied.

## BACKGROUND

Most of the key facts are set forth in the Court's prior Order and will be repeated here only to the extent relevant to the instant Motions; familiarity with the facts is assumed. See Nelson, 2011 WL 4640889, at *1-3.

In 2010, the Nelsons sued the Metropolitan Council (the "Council") and S.M. Hentges & Sons, Inc. ("Hentges"), its contractor, in Minnesota state court for damages to their home allegedly arising out of a nearby public-works construction project. Prior to starting construction, Hentges had purchased a liability insurance policy from American Home naming the Council an "additional insured," but "only with respect to liability arising out of [Hentges's] operations." The Council tendered defense of the Nelsons' action to American Home, which agreed to defend it as an "additional insured" under the policy. The Council and Hentges eventually moved for summary judgment in that action, and on January 7, 2011, the state court granted Hentges's Motion and dismissed it from the case but denied the Council's Motion. The case was then set for trial.

On February 16, 2011, American Home advised the Council that it was denying coverage and would no longer defend it in the state-court action in light of the summary-judgment ruling. Citing the policy's additional-insured clause, American Home concluded that there was "no longer any possibility that Hentges can be found liable for its operations at the project, [and therefore there existed] no possibility that the Council's liability arises out of Hentges' operations." However, it granted the Council a 30-day "grace period" during which it would "continue to pay the Council's reasonable and necessary defense costs."

On March 2, 2011 – during the 30-day grace period – the Nelsons agreed to settle their claims against the Council.  The settlement agreement provided, among other things, that the Council would (1) make a $250,000 cash payment to the Nelsons and (2) stipulate to the entry of a <u>Miller-Shugart</u> judgment against it for $900,000.  The settlement agreement required the Council's approval, which was obtained on March 30, and the terms of the <u>Miller-Shugart</u> stipulation were finalized on April 18.  The Nelsons and the Council filed the stipulation with the state court and, following a hearing, on May 2 the stipulation was approved by the court.  Judgment entered in the state-court action the following day.

The Nelsons commenced the instant action on May 4, 2011, asserting (among other things) that American Home wrongfully withdrew its defense of the Council in the state-court action and was liable for the $900,000 stipulated judgment amount.[1]  The parties cross-moved for summary judgment as to coverage for the stipulated judgment, and the Court ruled against the Nelsons because they had not proffered evidence demonstarting an "occurrence," which was a prerequisite to coverage under the policy. <u>See</u> <u>Nelson</u>, 2011 WL 4640889, at *4-7.  The only issue left for resolution, therefore, was whether American Home had breached its duty to defend the Council in the underlying action.[2]

---

[1] The Nelsons asserted the claim regarding defense of the underlying action because, pursuant to the settlement agreement, the Council assigned its rights against American Home to them.

[2] Although the parties' briefs on the coverage issue *discussed* the duty to defend, the Court did not address that issue in its previous Order because it was not properly before the Court at that time.  Nevertheless, American Home seems to suggest that the Court overlooked or simply

The duty-to-defend issue has now been "teed up" by the instant cross-Motions, which have been fully briefed, and a hearing with respect thereto was held on December 7, 2011.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Whisenhunt v. Sw. Bell Tel., 573 F.3d 565, 568 (8th Cir. 2009). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Weitz Co., LLC v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009); Carraher v. Target Corp., 503 F.3d 714, 716 (8th Cir. 2007). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

Where, as here, the Court confronts cross-motions for summary judgment, this

---

declined to address that issue when it ruled. (See Def. Mem. at 6 ("American Home believes that its [prior] motion put the . . . duty-to-defend issue squarely before the Court.").) It is incorrect. The Nelsons' prior Motion expressly sought summary judgment only "*as to coverage*." (Doc. No. 26 (emphasis added).) By the same token, American Home's Memorandum in support of its cross-Motion provided that it had been filed "in opposition to plaintiffs' motion and in support of it[s] own cross-motion *for summary judgment as to coverage*." (Doc. No. 45 at 1 (emphasis added).)

approach is only slightly modified. When considering the Nelsons' Motion, the Court views the record in the light most favorable to American Home, and when considering American Home's Motion, the Court views the record in the light most favorable to the Nelsons. "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, 414 F. App'x 882 (8th Cir. 2011).

## ANALYSIS

As the Court previously noted, an insurer owes its insured two duties under Minnesota law[3]: the duty to defend and the duty to indemnify. See Nelson, 2011 WL 4640889, at *5. The duty to indemnify is contract-based and is triggered "only when liability is assessed on a claim within the policy coverage." Seren Innovations, Inc. v. Transcon. Ins. Co., No. A05-917, 2006 WL 1390262, at *8 (Minn. Ct. App. May 23, 2006). In other words, an insurer's obligation to indemnify comes into existence only once liability has been "finally fixed and ascertained" against the insured. Metro. Prop. & Cas. Ins. Co. v. Metro. Transit Comm'n, 538 N.W.2d 692, 695 (Minn. 1995). The duty to defend is broader; it is triggered when a complaint *alleges* claims *arguably* falling within the scope of the policy. Nelson, 2011 WL 4640889, at *5 (citing St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co., 496 N.W.2d 411, 415 (Minn. Ct. App. 1993)); accord, e.g., Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 415

---

[3] State law governs the interpretation of insurance policies. Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003). Both parties agree that Minnesota law applies to this action.

(Minn. 1997) ("In determining the existence of [a duty to defend], a court will compare the allegations in the *complaint* in the underlying action with the relevant language in the *insurance policy*.") (emphases in original). The existence of a duty to defend is a question of law for the Court. E.g., Franklin v. W. Nat'l Mut. Ins. Co., 574 N.W.2d 405, 406 (Minn. 1998).

Here, it is undisputed that the claims asserted by the Nelsons in the state-court action arguably fell within the scope of American Home's policy and, hence, triggered the duty to defend; indeed, this is precisely why American Home initially undertook the Council's defense. (See Doc. No. 45 at 16.) American Home argues, however, that things changed following the state court's summary-judgment ruling. It asserts that the policy afforded the Council no coverage following Hentges's dismissal because the Council was an additional insured only for "liability arising out of [Hentges's] operations." According to American Home, liability "arising out of Hentges's operations" could not exist after Hentges's dismissal and, accordingly, it owed the Council no duty to indemnify following the state court's ruling, and concomitantly no duty to defend. (See Def. Mem. in Opp'n at 10 ("The state court's summary-judgment ruling marked the end point of American Home's duty to defend the Council since none of the claims against it were potentially covered as a result of the ruling.").) Yet, even if American Home were correct that Hentges's dismissal negated the Council's status as an additional insured, its argument would fail.

It is certainly true that "an insurer can withdraw from a defense after all arguably covered claims have been extinguished." Meadowbrook, 559 N.W.2d at 416 (collecting

cases).  And that makes perfect sense:  if a case does not include a claim for which an insurer could even arguably be forced to indemnify its insured, requiring it to undertake the insured's defense would expand the scope of its duties under its policy.  Id.

This principle, however, applies only "once all arguably covered claims have been dismissed with finality."  Id.  That is, "[a]n insurer's duty to defend claims arguably within the policy's coverage extends until it can be concluded as a *matter of law* that there is no basis on which the insurer may be obligated to indemnify the insured."  Id. (emphasis in original).  For this reason, an insurer "cannot withdraw from a defense until its duty to defend all arguably covered claims has been *completely extinguished* – in other words, *when no further rights to appeal those arguably covered claims exist*."  Id. at 417 (emphases added) (citation omitted).  To conclude otherwise would lead to absurd results, in which insurers could abandon their insureds following the dismissal of covered claims, only to have to re-engage their defense if those rulings were overturned on appeal.

In accordance with the foregoing principle, the state court's dismissal of the Nelsons' claims against Hentges cannot have terminated American Home's duty to defend the Council, because that dismissal *remained subject to appeal*.  Stated differently, at that stage of the case, Hentges's liability – and, derivatively, the Council's status as an additional insured – was not yet determined "with finality."  Id. at 416. Accordingly, at that juncture there still remained a "*possibility* of a duty by [American Home] to indemnify [the Council]," and hence the duty to defend remained.  Gen. Cas. Co. of Ill. v. Four Seasons Greetings, LLC, No. C8-021252, 2002 WL 31939106, at *1 (Minn. Dist. Ct. Nov. 6, 2002) (emphasis added); accord, e.g., Wells' Dairy, Inc. v.

Travelers Indem. Co. of Ill., 336 F. Supp. 2d 906, 911 (N.D. Iowa 2004) ("[A]n insurer's duty to defend, if it exists, includes a duty to defend the entire action. An intermediate order from a trial court dismissing a claim is not a final resolution of that claim. Such an order does not relieve an insurer of its duty to defend.") (citation omitted); 22 Minnesota Practice Series, Insurance Law & Practice § 3:3 (2011 ed.) ("If the relevant claims could be reinstated on appeal, then the insurer must continue to defend."). Simply put, Hentges's dismissal did not alter American Home's duty to defend the Council in the underlying action.

American Home also raises two other arguments for summary judgment on the duty to defend. It contends that this Court's prior ruling, which held that the Nelsons had failed to prove coverage for the $900,000 in damages set forth in the Miller-Shugart agreement, necessarily means that it "did not owe, or breach, any duty to defend the Council." (Def. Mem. at 6.) It also argues that even if it owed a duty to defend, it did not breach that duty because it continued to defend the Council through the 30-day grace period, during which the underlying action (purportedly) settled. (Def. Mem. in Opp'n at 4-8.) Neither argument is persuasive.

First, the Court's prior ruling that American Home owes no duty to indemnify *at this juncture* had absolutely no impact on whether American Home breached its duty to defend *in the underlying action*. As the leading insurance treatise puts it, "[a] declaratory judgment of no coverage, either by summary judgment or after trial, does not retroactively relieve the . . . insurer of the duty to defend." 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 200:48 (3rd ed. 2010). This results directly from the fact

- 8 -

- 9 -

that the duty to defend is broader than the duty to indemnify; the former exists *from the outset* when a plaintiff asserts an arguably covered claim (as here), while the latter does not arise until *after liability has been finally established*.  Accordingly, a declaration of no coverage "only relieves the insurer of the obligation to continue to defend *after the declaration*."  Id. (emphasis added); accord, e.g., John Deere Ins. Co. v. Shamrock Indus., Inc., 929 F.2d 413, 418 (8th Cir. 1991) (applying Minnesota law) (noting that the "situation may . . . arise where an insurer is obligated to defend, but upon ultimate disposition of the case it is determined that the insurer is not obligated to indemnify"); KBL Cable Servs. of Sw., Inc. v. Liberty Mut. Fire Ins. Co., No. A04-538, 2004 WL 2660709, at *5 (Minn. Ct. App. Nov. 23, 2004) ("The duty to defend is generally determined at the time the insured tenders the suit to the insurer. . . . Even if there is a subsequent determination that there was no duty to indemnify under the policy, the insurer's duty to defend is not extinguished if the claim was arguably within the scope of the coverage.").

Had this Court determined that the Council was *never* entitled to indemnification because the Nelsons had not asserted even arguably covered claims in the underlying action, American Home's argument might have fared better.  But that is not what the Court's prior ruling established – it held only that the Nelsons had failed to prove *at this juncture* that the stipulated damages in the Miller-Shugart agreement were caused by an

"occurrence." Hence, this Court's prior decision simply does not bear upon whether American Home was obligated to defend the Council in state court.[4]

Second, assuming American Home was obligated to defend the Council in the underlying action, the Court does not agree that it discharged that obligation due to the 30-day grace period. In essence, American Home asserts that the underlying action was over as soon as the parties agreed to a framework for settlement (which occurred during the grace period):

> The duty to defend the Council ended no later than March 2, 2011, the date on which [the Nelsons] and the Council entered into the mediated settlement. After March 2, there was no longer anything to defend because, by virtue of the settlement agreement, [the Nelsons] and the Council had a meeting of the minds – i.e., they agreed to settle the claims asserted against the Council in the underlying suit and understood that the agreement would terminate the litigation.

(Def. Mem. in Opp'n at 6.) But this argument ignores that the underlying action was not complete on March 2. Instead, as American Home recognized at oral argument, the settlement agreement required the Council's approval, which was not obtained until

---

[4] American Home relies upon Woida v. North Star Mutual Insurance Co., 306 N.W.2d 570 (Minn. 1981), and Union Pacific Railroad Co. v. State Farm Fire & Casualty Co., Civ. No. 05-334, 2006 WL 90083 (D. Minn. Jan. 13, 2006) (Kyle, J.), to support its argument, but neither aids its cause. In Woida, the underlying action remained pending when the insurer commenced a separate declaratory-judgment action seeking a determination that it owed no duty to indemnify or defend. Because it was determined the plaintiff's claims clearly fell outside the scope of the policy, the court held that there was no possible coverage, which resulted in the insurer thereafter being "*relieved* of its duty to defend." 306 N.W.2d at 574 (emphasis added). Woida, therefore, nowhere held, or even suggested, that the insurer *never* owed a duty to defend; rather, it was prospectively "relieved" of that duty once coverage was found lacking. Similarly, in Union Pacific, this Court held that the insurer had not breached its duty to defend because the plaintiff's claims, from the outset, clearly fell outside the scope of coverage under the policy. 2006 WL 90083, at *10. Here, by contrast, it is undisputed the Nelsons asserted claims arguably covered by the policy and, hence, triggered a duty to defend the Council in the underlying action. This Court's subsequent ruling did not (and could not) change that fact.

March 30, and finalization of the <u>Miller-Shugart</u> stipulation did not occur until April 18. In addition, a court hearing was necessary before the settlement could be approved and the case dismissed. It was critical for the Council to have representation during this time in order to, among other things, ensure that the settlement was acceptable to the state court. Indeed, assume *arguendo* that the settlement had fallen apart because the state court had declined to endorse it. Under American Home's logic, it would have had no obligation to defend the Council thereafter even though it (the Council) would have been in precisely the same position it had been in before the parties had agreed to settle. The Court will not endorse such a non-sensical result.

Based on the foregoing, the Nelsons' Motion for Summary Judgment on the duty to defend must be granted and American Home's cross-Motion must be denied. The only remaining issue, therefore, is the nature of the relief to which the Nelsons are entitled.

The record indicates that the Council incurred approximately $5,000 in costs after American Home withdrew its defense in the underlying action, and it is not seriously disputed that the Nelsons may recover that amount for breach of the duty to defend.[5] While American Home asserts that "[t]he agreement to settle the case. . . was made on March 2, and the legal costs incurred by the Council after that date related to finalizing settlement, not defense costs" (Def. Mem. in Opp'n at 12), the Court disagrees that costs incurred finalizing a settlement agreement are somehow distinguishable from "defense costs." This argument amounts to nothing more than semantic gymnastics.

---

[5] By way of reminder, although the duty to defend the underlying action was owed to the Council and not the Nelsons, the Council assigned to them its rights against American Home and they are standing in its shoes in this litigation.

The Nelsons also claim they are entitled to the fees incurred in prosecuting *this* action, and the Court agrees in part. The law in Minnesota is well-settled that attorneys' fees and costs are recoverable when an insurer breaches its duty to defend. See, e.g., Chi. Title Ins. Co. v. FDIC, 172 F.3d 601, 605 (8th Cir. 1999) (applying Minnesota law); Indep. Sch. Dist. No. 697 v. St. Paul Fire & Marine Ins. Co., 515 N.W.2d 576, 581 (Minn. 1994) (when a breach of the duty to defend occurs, the insured "is entitled to be reimbursed for attorneys fees and costs expended" to force the insurer to pay for the defense). Hence, the Nelsons are entitled to recover fees and costs incurred in this action to show that American Home breached the duty to defend.[6] However, the Nelsons may not recover fees and costs incurred litigating the separate coverage issue, which has already been decided against them.[7]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that the Nelsons' Motion for Summary Judgment on the duty to defend (Doc. No. 83) is **GRANTED** and American Home's Motion for Summary Judgment on the duty to defend (Doc. No. 72) is **DENIED**. It is further **ORDERED** that the Nelsons

---

[6] American Home argues that it would be inequitable to permit a fee award in this case when, at most, it failed to reimburse a "de minimis amount of the Council's settlement expenses." (Def. Mem. in Opp'n at 12-13.) Of course, it could be argued that it would be just as inequitable to permit American Home to "get away with" abandoning its insured in the state-court action by not awarding fees here. Regardless, American Home cites no authority for the proposition that fees are not awardable when an insurer's breach of the duty to defend results in only *de minimis* cost. While this might be relevant to the *extent* of the award to which the Nelsons are entitled, it does not undermine the conclusion that they may recover fees.

[7] The Nelsons have indicated that they will move the Court to determine the appropriate amount of fees within 30 days of its ruling on the instant cross-Motions.

shall serve and file an application for determination of the amount of fees and costs to which they are entitled within 30 days of the date hereof, and American Home shall serve and file its response in accordance with Local Rule 54.3. As this represents the only issue remaining in this case, judgment will enter following the Court's determination of the appropriate amount to be awarded.[8]

The Court takes this opportunity, however, to strongly encourage the parties to resolve this matter through settlement before briefing the fee issue. This relatively simple case has become unduly acrimonious, engendering more than 120 docket entries in its short life, multiple motions for sanctions, and repeated hearings before Magistrate Judge Noel. Moreover, it has become abundantly clear that an appeal in this action is in the offing, which will only result in further delay and expense for the parties. The Council began construction on the project near the Nelsons' home in 2007, and the Nelsons have been fighting with it ever since. In the Court's view, it is in the best interests for all involved to bring this legal odyssey to an end once and for all.

Dated: December 12, 2011                s/Richard H. Kyle
                                         RICHARD H. KYLE
                                         United States District Judge

---

[8] Accordingly, American Home's Objections (Doc. No. 117) to Magistrate Judge Noel's November 16, 2011 Order are **DENIED AS MOOT** insofar as they concern discovery. To the extent the Objections concern the award of sanctions, however, the Objections remain pending.